Number 2330277, Team Contractors v. Waypoint. We'll hear first from Mr. McCormick. Good morning, Your Honors, and may it please the Court. John McCormick, I represent the procedural history of this case has been briefed extensively by the parties. I will therefore delve straight into the arguments. Leaving aside for the moment the trial court's denial of Team's summary judgment on its payment claim, the basis of this appeal in large part is the designation by the trial court of Waypoint and not Team as a substantially prevailing party in the litigation. That finding was based on an inappropriately narrow reading of the fee-shifting provision that was included in Team's contract with Waypoint. Is there a decent argument that neither one was substantial because you got some money, they won some stuff? There is, yes, Your Honor, and we cite in brief an article from the Florida A&M Law Review, I believe the author's name is Schleppenbach, that is the most comprehensive survey that I have found of these different ways that courts treat these contractual fee-shifting positions, and that is one way that courts, I wouldn't say typically, but I would say often deal with these situations with competing claims and competing or various elements or levels of success, yes, that is a possibility. But the clause at issue, and I'll read it very quickly for reference, in the event of any litigation arising under this agreement, should one party substantially prevail with respect to the matters being litigated, the non-prevailing party shall pay the prevailing party's costs and expenses of such litigation in terms of expert fees. Neither team nor Waypoint has argued at any point that this language is ambiguous. There are two separate interpretations. The difference fundamentally between those two interpretations is that the interpretation posited by Waypoint and adopted by the trial court is the only one of the two that requires the insertion of implications by presumption as to concepts and terms that are simply not included in the language of the fee-shifting provision. In the, what I'll refer to as the SPP order, the order by the trial court finding Waypoint to be the substantially prevailing party, the trial court stated that this clause that I just read only applies to claims asserted between Waypoint and team and also is only triggered when one party breaches the agreement. Well, neither one of those things is included in this provision, as they often are in similar provisions. And in fact, the contract itself in other places defines these terms. For example, in the same article as you'll find the fee-shifting provision in Article 15, claims are defined as disputes between the parties to the contract, between Waypoint and team, where demand or assertion by one of the parties seeking as a matter of right payment of money or other relief with respect to the terms of the contract. If the parties intended for the fee-shifting provision only to pertain to claims asserted between contractor and owner, that language very easily could have been inserted into the fee-shifting provision. My problem with your interpretation is that it seems to ignore the last, yeah, the last half of that sentence which says, in the event of any litigation, should one party substantially prevail, the non-prevailing party shall pay the prevailing party's costs and expenses. If you didn't have here, in other words, does that, are you implying that Waypoint should pay your costs and expenses for something? That's correct, Your Honor. Arising out of your litigation with third parties? Well, the litigation wasn't... Say those two contractors. Well, and that gets us ahead to, yes, Your Honor, that is actually exactly what our position is. And we believe that the broad language identifying any litigation as the venue, for lack of a better term, where that provision is triggered is supported in reasoning and rationale by the third-party litigation doctrine, which has been adopted throughout the country by circuit courts and state courts, where one party, whether it's a contractor or not, one party is compelled to seek their damages elsewhere when they are owed by the principal party. It's an exception to the American rule, and we're not asking that this court apply that rule necessarily. The argument throughout by Waypoint has been that Teem's interpretation doesn't make sense. It's absurd, right? That parties could not have intended to have this sort of broad-reaching effect. But they could have, and it makes perfect sense based on the rationale of those cases under which the third-party litigation has been applied, whereas we have gone and asked for payment from our . . . Do you think that Waypoint, having paid you just before trial, or the first setting of the trial, is some prevailing on your part? I'm sorry. I didn't catch the first part of your question, Your Honor. I'm sorry. I thought that Waypoint paid you all shortly before the first setting of the trial, and I'm asking whether you are contending . . . I thought you are . . . that that is a prevailing. That's right, Your Honor. We are. Even though the court didn't order it, they threw it out to avoid the order, basically, right? That's right, Your Honor. That is our contention. So that's one of the . . . even if we ended up covying this to you and Waypoint and not consider the other parties, your argument would be that was a prevail, and therefore, that turns back to this issue of whether there's a substantially prevailing party or not. That's right, Your Honor, and that dovetails with the prevailing standard, both in this jurisdiction under U.S. v. Mitchell, as well as Louisiana, from Peyton Place or any of the other cases cited by the trial court, where a plaintiff who prevails on any significant issue in the litigation should be considered . . . or a plaintiff who prevails on any significant issue in the litigation should be considered the prevailing party. So that relief does not have to be judicially declared relief? That's right, Your Honor, and that's actually specifically discussed in the law review article that I referenced earlier in the survey. There are courts who have specifically found a prevailing party who achieves some measure of success, whether it's through settlement or even a nonjudgment, somehow by instituting suits, by filing suits, has achieved the objective that it set out to gain, right, to get paid. So yes, the team's position is that by filing suit and by having to file suit, the team eventually did compel the payment of that contract balance claim, which was separate from the design-related damages that it got at trial. That's right. What were your . . . what attorneys' fees, amount of attorneys' fees would you be claiming? The amount of attorneys' fees that we would be claiming would be all attorneys' fees up to and including, at least on the payment claim, at least up to the date of payment, which was July of 2017. Up to when Waypoint paid you? That's right. But then we also have . . . we also take the position that we were the prevailing party in general in the litigation by recovering almost $600,000 in design-related damages from Waypoint's design consultants when the work that was the foundation of those damages was ordered by Waypoint specifically under Article 7 of the general conditions of the contract, which provides for the construction change directive process, where the project is under pressure, the owner orders the contractor to proceed with remedial work, and the provision says we'll basically work out payment later. Well, all that happened except for the last part. So we had no option to refuse the work. We performed the work, and then when we turned around for payment, we were told to go see the architect and engineer. Okay. So as you know, we've got to ask everything regardless of how it may come in. Absolutely. So we'll go the other 180 degrees, which is we totally affirm on everything except we turn to the amount of the attorneys' fees given to Waypoint. What is the issue with that? What's your best argument? The fee award in general, both the magistrate and the trial court ignored two key issues on the fee award. One that, based on my research, is somewhat of a novel issue is the fact that Waypoint was already in litigation. They filed suit against HTA and KLG three months before we filed suit for substantially the same claims. They were in court, they were going to be in court, arguing substantially the same claims with the same experts about the same design busts, the difference being really just elements of damages. In fact, if you look at it as a whole, Waypoint benefited substantially from team essentially intervening in the ongoing dispute between Waypoint and its design consultants by helping to prosecute those claims. The underlying tenet of attorney's fees either to compensate the other party for defense costs that they wouldn't have been incurring anyway, that's not the case here. Waypoint was fully prepared to incur these costs. The second thing is the deterrent effect. The magistrate, Magistrate Kuralt, specifically cited Peyton Place by saying that the idea behind attorney's fees is not necessarily to make the other party whole, but to serve a deterrent effect, and then proceeded to completely ignore that element, as did the trial court. In fact, the trial court specifically refused . . . I don't understand that argument in regard to attorney's fees. I mean, maybe in 1983 suit, but you're talking about a contractual arrangement. That's right. And I don't see who deters whom in contractual arrangements, and I've frankly never heard that argument made before. Well, Your Honor, that's from the Peyton Place case in the Fifth Circuit from Louisiana, which is not a civil rights case. But more generally, Your Honor, fee-shifting mechanisms, whether statutory or contractual, are by nature and character deterrent devices. The idea is that under a statutory regime, the idea is to deter parties, entities, even government agencies from engaging in conduct, you understand. So in contractual provisions, the deterrent is, we have a contract, if you're going to file suit, if you're going to bring me into court, your claim better not be frivolous or retaliatory or otherwise meritless, because if you end up on the wrong end of that, you're going to owe . . . Okay, but isn't there a problem in just how they evaluated the fees? So I mean, never mind what the reason is for them, but in my experience, you have to look at the attorney's fees point by point, attorney by attorney, hour by hour, and not just go, ah, we'll take out 25 percent and go on. I mean, so tell me what, if we were to get to that point . . . Yes, Your Honor. . . . what would we say if we concluded that just saying, ah, 25 percent isn't the right approach? What should, how would you write that opinion if you were able to do that? And I understand your question, Your Honor, under the presumption that . . . No, I know. I mean, I'm asking everything. Okay. So if everything else is affirmed and we're just looking at the quantum, the attorney's fee quantum, yes, our argument was that we went through 450 pages of invoices and identified those entries that were not clearly, that were not clearly and distinguishably related to teams' independent claims versus those claims that Waypoint was already pursuing on its own, and we calculated, I believe the number we came up with was 17 percent of those fees that were identified, that were included in the invoices, were specifically allotted to teams, mainly on teams' contract balance claim, up to and including, I believe, February 18th, 2018 was the date that Waypoint settled with the design consultants, and at that point it was no longer . . . And isn't that something the district court's supposed to do? That's why that's a hard job for a judge. I mean, I've done it as a state district judge, and I'm well aware. Yes, Your Honor. I didn't have any law clerks. I had to do it all without any help. I think as a starting point, it's the job of the magistrate, and if the magistrate doesn't do it, then I think the district court . . . Yeah, well, I didn't have a magistrate judge either as a state district judge. The percentage method is okay as long as there is a thorough analysis on the lodestar factor, correct? Well, the . . . The percentage sort of way of doing things is not per se incorrect. It's not per se incorrect, but if there's no other way to do it. But I think here, we clearly demonstrated that there was a more detailed way to do it and to come up with a more accurate and appropriate measure of damages. Would that be covered by legal error or an abuse of discretion for neither one? I believe it would be legal error in the methodology, Your Honor. If the magistrate and or the district court went and just calculated it wrong, it was a mathematical error, then I think that would be abuse of discretion or clear error. If they went about it the wrong way, if the district court went about it the wrong way and said, you know, I don't really want to go through all these invoices. I'm just going to knock off 25%, then yes, I think that's legal error on methodology. But the district court didn't . . . magistrate just didn't precisely say that. Didn't precisely say what, Your Honor? Say, I'm too busy to go over the invoices. I'm just knocking off 25%. No, Your Honor. The magistrate did not specifically say that, that I can recall in the recommendations. Yeah. Your Honor, I think that the third-party litigation doctrine, I think, is fairly well laid out. Again, we're not asking this Court to apply that doctrine or that . . . We're asking . . . Your red light is on. Oh, excuse me, Your Honor. You have time for rebuttal. Thank you. All right, thanks. Mr. Shields. May it please the Court. Lloyd Shields for Waypoint NOLA LLC. There are only two issues properly before the Court. Whether Waypoint was the substantially prevailing party and whether the amount of attorney's fees award given by the district court was appropriate. We have filed a dismissal of the other two reasons for the appeal by team, and that is the 2017 summary judgment motion and the mandate judgment that we would ask for this Court to dismiss those two. I will briefly address those two first. The mandate, the district court literally filed the Fifth Circuit's judgment as its mandate. The mandate judgment is conclusive. There is no appeal period left. It's just on appeal. As to the 2017 summary judgment motion, this rather novel approach to an appeal that's six, seven years old, the district court found as follows, and I quote, that there are material facts in dispute, and as a result, the team's motion for partial summary judgment is denied, close quote. The first jury trial, of course there were two as you all know, the first jury trial covered everything that was covered in that summary judgment motion, and so the summary judgment motion is of no moment anymore. It's not appealable, and it's an interlocutory order. This is what the U.S. Supreme Court said about such things. Quote, the denial of a motion for summary judgment because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of the claim. It is strictly a pretrial order that decides only one thing, that the case should go to trial. Your Honors, that's the Swiss cheese case that is cited in our brief, but that's exactly what happened here. The matter went to a jury trial, and any reconsideration of that 2017 summary judgment motion would put aside seven years of litigation and make it meaningless. So we would ask that the dismissal motion be granted. On the issue of substantially prevailing party, the contract was between two people, two parties, and two parties only. This is Article 1.1.2 found at ROA 383. The entire contract itself is ROA 362 through 424, only two parties. In fact, that same Article 1.1.2 negates relationships with any other party specifically. This is what the . . . Okay. Let me ask you, I know you don't think that's appropriate here, but do you agree that there can be cases where neither side is substantially prevailing? Certainly, there could be. Okay. I know you don't think that's true here. Correct. Why is that not true here since you all threw out the money right before trial? All the cases, I know that's one of the team's arguments, all the cases which talk about the ratios, which I'll talk about in a minute, have to do with judgments. That was not a judgment. In fact, specifically in cases it says that the judgment which was taken, this was all beforehand. But you all wouldn't have done that without a trial, I mean, without a trial being about to happen. With all due respect, Your Honor, of course we would. The reason why we didn't pay was because team never came across with the waivers of liens and claims. They hang on the lien business. It's also claims. White Point's lenders were the ones who were pressing this thing, and that's why that contract provision of lien waivers and claim waivers was so important. Finally, the bank said, okay, you can pay them. In fact, as is briefed, team had subcontractor claims that exceeded that amount of money, and so they couldn't even pay it then. Even worse than that, team said, we're going to take our overhead and profit out first. So to protect White Point as the owner and to protect the bank, of course that clause is important. What's the time limit in Louisiana for filing liens? For filing the lien, it depends on whether the contract is recorded, which it was here. The time for subcontractors to file liens is 30 days, and then they have to file suit on that lien within one year. Exactly. So you didn't pay them until at least two years had elapsed? Correct. Claims. The clause says liens, claims, and it says other things. And so you say this is . . . what in your contract said you didn't have to pay? In other words, you said the bank insisted on these waivers or releases of claims. But the bank's not a party to your contract. Oh, correct. I'm just telling the court practically speaking what happened. Well, so why does that give White Point an excuse not to pay? The clause in the contract, which is . . . Waiver of liens. So did they finally turn over waivers of claims or not? They never did fully. So then you had to pay them? Went ahead and paid. Yeah, but they still had to file suit and you had to undergo everything up to two weeks, two months before trial. Judge, the payment was not related to filing the suit. It was finally that we were able to pay them and chose to pay them. They never did supply the reason why the payment wasn't made. Well, are you asking us to go behind that litigation just the same as they're asking us to go behind the litigation for the extras because it doesn't really matter why you didn't pay them. It's the fact that they did have to file suit. They did have to undertake attorney's fees and so on in preparation for trial. No, Your Honor. So they finally got their money. We are not asking . . . Excuse me. You're not asking that of you at all. We are saying there is a contract provision that said we didn't have to pay them even when we did. And so there was a perfectly good reason not to pay them even all the way through trial. It was an election to pay them. But again, that was never decided in your favor. You finally gave up or somebody gave up. So what I'm saying is whether it comes about by settlement as opposed to judgment, you don't have a judgment that is based on this portion of the contract. Your Honor, I think that's my point is that it never was taken to judgment and therefore the ratios . . . You can prevail without having a judgment. Well, as I'll . . . That's true in 1983 law also. Well, that's interesting. As mentioned earlier by the Court, 1983 law and also Title VII law and also, I forget the third, but it's those cases which are cited by TEAM which are not contractual cases. And that is a great distinction there. But when I get to the . . . in just a moment, I'll show the ratios. Even if TEAM is able to use that million dollars that was paid before trial, they still are not the substantially prevailing party. In fact, in this case, the jury verdict, very importantly, no breach of contract, the jury said by waypoint against TEAM, and zero dollars. Specifically, the jury said those two things. Because by that time, you paid the million. No, they sought 5.2 million more, Your Honor. 5.2 million more at the trial. They sought. That's what we're talking about here. The million was only 20% of that 5 million. So even if you count it, that's only 20%. I submit to the Court that 80% for waypoint . . . But they have some dispute over that in their briefing. They do, and I'll cover that in just a moment, Your Honor, if I may. So if you go with zero verdict, no breach of contract, zero for TEAM against waypoint, no breach of contract, that's 100% for waypoint and 0% for TEAM. The TEAM attempts to escape the reality of that verdict by saying that the responsibility, the 10% figure in the jury verdict form, was somehow equal to liability. But that issue was addressed by this very Court in the September 2020 judgment. The concurrence by Judge Clement, joined by Judge Higginson, says, We likewise can't assume that the jury based this finding on negligence by waypoint. That waypoint caused some of TEAM's damages doesn't mean that waypoint caused them by breaching a duty owed to TEAM. The district court might have thought that the verdict was inconsistent because there was no evidence of negligence, but a defendant need not be negligent to cause damages. Indeed, he need not have done anything wrong at all. Damages happen. They aren't always caused by wrongful conduct. In effect, TEAM tries very hard in a great part of its briefing to hang on to something called third-party litigation, a novel concept in Louisiana and a novel concept in this Fifth Circuit. In fact, the concept is based on the restatement second of torts. The citation by TEAM in its brief of third-party litigation says that there are some other circuit courts of appeal that have acknowledged this, but if you look down the footnotes and then follow the cases, only seven states have done this. The critical thing is, though, the first element of third-party litigation must have either a contract breach, the jury told us we don't have that  This is important, Your Honors. Originally, TEAM filed suit against Waypoint for both tort and contract against the designers, only in tort. TEAM withdrew its tort claim against Waypoint so that at the time this went to trial, you had a contract claim against Waypoint and a negligence claim against the designers. It couldn't be more clear, and that clearness was designed by TEAM. TEAM poses several hypotheticals to get around the zero verdict, and that's where we get into the dollars here. If you look at the basic zero verdict, obviously Waypoint would be a 100% victor, but TEAM sought $5,238,000 until the eighth day of this nine-day trial. In its briefing, TEAM says, no, we didn't, but yes, they did. Here are the figures, and here's the evidence. That $5,202,000 was made up of $3,792,000 in . . . I keep saying that. Sorry. $3,972,000 of lost profit. They claimed that until the eighth day of the nine-day trial, $1,003,000 in design errors, $100,000 in unpaid other contract balances. It's important to consider the lost profit. This is at ROA 11863. This was a demonstrative. This is a small version of a demonstrative that was actually a large chart that TEAM submitted at trial. Here's the figure, $3,792,540 that they were claiming as lost profit. How can they say that they didn't really claim that? Here's the joint pretrial order. This is at ROA 6641 through ROA 6649. Specifically, TEAM agreed to this. This is the contested issues of fact. 53, whether TEAM can recover lost profits under the prime contract. 63, whether TEAM lost profits because of the project. 105, whether there's a factual basis for TEAM's lost income slash lost profits claim. Contested issues of law at ROA 6649. Number 12, TEAM's entitlement to lost profits. Then number 34, whether TEAM is entitled to recover lost profits from Waypoint. Finally, there's an affidavit by its main representative, Mr. Brent Fortner, which is contained at ROA 4120 at SEC, where he in four numbered paragraphs says, we want the lost profit. Here's an example. This is paragraph eight. Anticipating a customary profit of 6% above the estimated bid contract value, TEAM reasonably could have expected to realize a net profit of $3,792,540, which is exactly what their demonstrative says, and said until the eighth day of trial. So yes, they were seeking lost profits. That means that the $5,238,000 figure has to be the denominator if you're going to do a ratio to determine substantially prevailing party. And again, Your Honors, it's substantially prevailing party, not just prevailing party. If you take TEAM's arguments, this is their alternative number one. Say that the $1,023,000 that was paid before trial is counted. If you make the ratio of $1,023,000 over $5,238,000, which they sought, that's about 20% for TEAM, 80% for Waypoint. Another example they give. If you include the designer portion of the judgment, $509,000. If you make the ratio of $509,000 over $5,238,000, that's about 10% for TEAM, 90% for Waypoint. That is substantially prevailing. Finally, Your Honors, the fee order itself. These fees encompassed seven years of litigation, two full jury trials, extensive motion practice, and it's amazing the detail to which the magistrate judge, and then the district judge again, went through 444 pages of invoices, line by line. After the objection by TEAM, the district court judge was forced to do that and she did it de novo. The reasons in detail are given. While the district judge did reduce the load star, she held to the 25% that Magistrate Kuralt had found. I'll read directly from Magistrate Kuralt's findings. Quote, while Waypoint exercised billing judgment by reducing entries for claims unrelated to defense against TEAMs and miscellaneous entries, and then their citations omitted, the court found numerous entries that did not reflect the proper exercise of billing judgment. She gives example after example, invoice numbers, all this sort of thing. How in the world . . . well, I'll just say there is no way in the world that anybody can say the magistrate judge and the district judge didn't look at these things in detail and neither side requested any adjustment under the Johnson factors. After two extensive reviews, the fee should remain the same. Your Honors, the jury spoke. No breach by Waypoint. Zero dollars given to TEAM by Waypoint. That's a 100% win for Waypoint. The Waypoint attorney fees were reviewed in extensive detail two times. This court should sustain and Waypoint requests this court should sustain the finding that Waypoint was the substantially prevailing party and the amount of the fees that were awarded. Thank you. All right. Thank you. Mr. McCormick, rebuttal. Thank you, Your Honor. First of all, Judge Jones and Haynes, your questions about the timing of the payment actually sort of predomit my discussion of the MSJ denial, which substantively has to do with there being no cause to that payment defense that Waypoint asserted. If there was a cause, then it was subject to the whim of Waypoint to fulfill it. Your Honors, I think hit it on the head that the timing and the history of those requests and that final payment show on its own that there was no cause to withhold Team's million dollars of money. There was no evidence. Nobody from the bank was ever deposed. Nobody from the bank testified. There wasn't any evidence that Waypoint was prevented from paying Team because of the bank. That's the story we got, but there was no evidence on that. The fact that Waypoint did finally pay two months before trial tells us that they could have paid any time. There's nothing preventing them from doing that. This term claims to recovery ratio, or I forget the exact term that's used in Waypoint's brief, but I haven't seen any cases citing that term. I think that term is contrived because it sounds a whole lot better than the controlling standards of this court and Louisiana that essentially say in different ways that a plaintiff who achieves any substantial objective in litigation should be considered the prevailing party. The other thing to consider if we are weighing claims is that even though it wasn't an affirmative claim, Waypoint did assert fault against Team. Team was included on that comparative fault sheet on the verdict forms, Team and three of its subcontractors, all zeroed by the jury. To be honest, I haven't done an exhaustive search, but just in my experience, it is almost a unicorn to find a construction case of this magnitude and this complexity with competing claims where the contractor is found absolutely zero at fault for his own damages that he's seeking or anyone else's damages. If there's a balancing test between success on affirmative claims and defenses, that has to be weighed in as well. Team was zero percent at fault for anything that went wrong on this project, and Waypoint's own project manager that we have quoted in our brief said so. Finally, because we've sort of skipped over it, I do very briefly want to mention the jurisdictional question of the denial of the summary judgment. There are really two ways to characterize Team's challenge of that order. Either, as Team contends, that order, that interlocutory order, is merged into the final fee order, which is a 1291 judgment, because it's directly relevant to the SPP, the Substantially Prevailing Party Determination and Ultimate Fee Award. If the trial court correctly grants that summary judgment at that time, we have a judgment in our hand, and I don't think we're here fighting about this. We're the Substantially Prevailing Party. On the other hand, if it was an interlocutory order that was merged into the mandate judgment, then this appeal was the first time we ever had an opportunity to get appellate review of that. The recent Dupree case in the Supreme Court is much broader than getting rid of a procedural hurdle, the post-trial motion to appeal a summary judgment on purely legal grounds. It goes into great detail, giving the rationale and the basis for a party's almost unqualified right to direct appellate review, although not immediately, but at some point, to have direct appellate review of the denial of a summary judgment on purely legal grounds. The court may have said there are disputed facts, but there were no disputed facts. We didn't dispute the fact that we hadn't submitted a lien waiver that was acceptable to them. Obviously, we hadn't. Our complaint was a purely legal one, that this contract provision had no cause and or that the suspension of the condition that would have brought about payment was completely at the whim of Waypoint, which it clearly was, because they paid when they wanted to, when it was convenient, and when it was going to be a good look for them. With that, Your Honor, we respectfully request that you reverse and designate team as the prevailing party for further determination of attorneys' fees on quantum. All right. Thank you, Your Honor. Thank you very much. The court will stand in recess until 9 o'clock tomorrow.